STATE EX REL. HALL ET AL., RELATORS, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 8,010.)

(Submitted September 25, 1939.   Decided November 1, 1939.)

[95 Pac. (2d) 438.]

*Mr. E. C. Kurtz, Mr. Jay M. Kurtz, Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* for Relators, submitted an original and a reply brief; *Mr. E. C. Kurtz* and *Mr. Ford* argued the cause orally.

*Messrs. O'Hara, Madeen & Grant* and *Mr. Rowland M. Butler*, for Respondents, submitted a brief; *Mr. Butler* argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting by consent of both parties, delivered the opinion of the court.

In March, 1939, a petition was filed in the office of the clerk of the District Court of Ravalli County, Montana (that being one of the counties of the Fourth Judicial District of this State), seeking the creation of a drainage district under the provisions of Chapter 94 of the Civil Code of 1935. Thereafter an order was duly made fixing the time for hearing the same and notice of such hearing was given in accordance with the order of the court, and served upon all landowners within the boundaries of such proposed district. The relators allege that before the hearing of such petition, but after notice of such hearing had been given, the petitioners therein were permitted by an order of the court to amend the same; that such amendment changed the boundaries of the proposed district as set forth in the petition; that no further order was made or notice given of the hearing of the petition after such amendments were made; that objections to the sufficiency of such petition and to the notice given for the hearing of same were duly made; that on the 26th day of April, 1936, the petition came on for hearing, when witnesses were sworn and testified in support thereof and in opposition thereto; that thereafter the court permitted the filing of a copy of the original petition, which contained the name of a person having an interest in land within the district which name did not appear upon the original petition, to all of which relators duly objected; that the court thereafter and on June 21, 1939, made an order finding, in substance: "That the signatures of the adult owners of more than one-half of the lands in the proposed drainage district are affixed to said petition." And the order further provided that on June 28, 1939, both petitioners and objectors thereto would be afforded an opportunity to suggest

boundary lines for the district and, as well, the names of persons to be designated as commissioners thereof.

The relators assert that such petition "failed to contain a general description of the proposed starting point, route, and termini of the proposed drain ditches, and did not contain a general description of the land proposed to be included therein"; that the notice and hearing of such petition was defective in a number of particulars which are specified in the petition herein; that the court was in error in permitting amendments of such petition to be made in matters of substance after notice given of the hearing, without giving further notice thereof; that such petition did not meet the requirements of section 7265, Revised Codes 1935, in a number of particulars, which are specified in the petition herein; and that the court exceeded its jurisdiction in making the order complained of. The relators are owners of land within the proposed drainage district and allege that no appeal lies from the order made by the district court; that there is no plain, speedy, or adequate remedy at law; and that the petitioners will be greatly damaged if the district be created.

The relators here seek a review, under the supervisory powers of this court, of all of the proceedings leading up to the making of the order of June 21, 1939, and the annulment of that order. Upon the filing of the petition herein an alternative writ issued. The respondents appeared by motion to quash and by answer.

The order complained of was made pursuant to section 7276, ▇ Revised Codes of 1935, which section, in part, provides: "The court shall hear and determine whether or not the petition contains the signatures of a majority of the adult owners of lands within the said proposed district who are of lawful age, and who represent one-third in area of the lands proposed to be affected by said work, or the signatures of the adult owners of more than one-half of such lands, and shall determine all questions of law arising on said contest."

After making the above order the court must appoint commissioners, divide the district, etc., as provided by section 7280,

Revised Codes of 1935. The commissioners thus appointed must organize, cause surveys to be made of the land within the district, and make a preliminary report to the court as provided by section 7291, Id. After the filing of such report the court must, by an appropriate order, cause the same to be noticed for hearing. (Sec. 7293, Id.) At that hearing interested parties may appear and remonstrate thereto. (Sec. 7295, Id.) If, in this report, lands are added which were not included in the original petition, notice shall be given as required upon the hearing of the original petition. (Sec. 7296, Id.) All of the issues so made up shall be tried by the court without a jury. (Sec. 7297, Id.) Upon the trial, if there be a remonstrance filed, the court may find in favor of the remonstrators and dismiss the petition; or if no remonstrance be filed, but if the report shows that the proposed work will not promote public welfare, etc., the court may dismiss the petition upon those grounds; and in case of the dismissal of the petition, the costs are taxed—not against the objectors, not against the remonstrators—but against the petitioners. (Sec. 7297, Id.) On the other hand, the court may, after such trial, make an order establishing the district. (Sec. 7298, Id.) Appeal lies from that order. (Sec. 7299, Id.) The drainage district does not come into existence until after the order mentioned in section 7298, supra, has been made. (Sec. 7300, Id.)

Thus it will be seen that the order complained of does not establish the drainage district. The petition for the creation of the district may be dismissed. The district may not be established at all. If it is not established, these petitioners are saved, harmless. On the other hand, if the district be established, the relators have a remedy by appeal—for every question raised in this proceeding may be presented upon such appeal.

The district court, in considering the petition for the creation of a drainage district and in making the order complained of, was acting within its jurisdiction. Certainly it may not be said that the court's action in making the order complained of was tyrannical. As above noted, if an order is finally made

creating the irrigation district, and if the relators' lands, or any thereof are included therein, appeal lies therefrom, and, therefore, relators have a remedy which in our opinion is plain, speedy, and altogether adequate, without resorting to this most extraordinary of all legal proceedings. (*State ex rel. Topley* v. *District Court*, 54 Mont. 461, 171 Pac. 273.) In that case this court observed: "The proceeding [supervisory control] will not lie unless there is no appeal, or the remedy by appeal is inadequate. (*In re Weston*, 28 Mont. 207, 72 Pac. 512; *State ex rel. Carroll* v. *District Court*, 50 Mont. 428, 147 Pac. 612)," and observes therein further: "and we can not permit it [writ of supervisory control] to be used as a convenience or shorter route to precedence over other causes equally entitled to our consideration."

It is well to observe, too, that in the *Topley Case* above cited, this court indicated that the order complained of was erroneous; but despite that this court held that the remedy by appeal was adequate. In *State ex rel. Heinze* v. *District Court*, 32 Mont. 579, 81 Pac. 345, this court observed: "The writ of supervisory control is one to be seldom issued, and then only when other writs may not issue and other remedies are inadequate, and when the acts of the court complained of as threatened will be arbitrary, unlawful, and so far unjust as to be tyrannical." In the case of *State ex rel. Peel* v. *District Court*, 59 Mont. 505, 197 Pac. 741, 743, this court said: "The writ of supervisory control is in the nature of a summary appeal, and the last refuge whereby relief may be had. It will issue only when there is no other plain, speedy, or adequate remedy at law by appeal or other constitutional writ."

The supervisory powers of this court have been examined and discussed in many cases, among which are the following: *State ex rel. Whiteside* v. *District Court*, 24 Mont. 539, 63 Pac. 395; *State ex rel. Grogan* v. *District Court*, 44 Mont. 72, 119 Pac. 174; *State ex rel. Clark* v. *District Court*, 30 Mont. 442, 76 Pac. 1005; *State ex rel. Nipp* v. *District Court*, 46 Mont. 425, 128 Pac. 590, Ann. Cas. 1916B, 256; *State ex rel. Butte Land & In-*

*vestment Co.* v. *District Court,* 37 Mont. 226, 95 Pac. 843; *State ex rel. Hubbert* v. *District Court,* 54 Mont. 472, 171 Pac. 784; *State ex rel. Klein* v. *District Court,* 35 Mont. 364, 90 Pac. 161; *State ex rel. Spinazza* v. *District Court,* 83 Mont. 511, 273 Pac. 638; *State ex rel. Larsen* v. *District Court,* 78 Mont. 435, 254 Pac. 414.

If the supervisory powers of this court are to be set in motion whenever it is charged that the trial court has fallen into error during the course of a trial or proceeding, then two results must inevitably follow: First, the trial in the court below is delayed interminably while this court is hearing and passing upon the point or points raised; and second, and of much greater importance, much of the time of this court is taken up in the hearing and determination of these matters—thus hearing piecemeal what ought to be presented and passed upon as a whole. The language used in the case of *State ex rel. Shores* v. *District Court,* 27 Mont. 349, 71 Pac. 159, and which is quoted with approval by this court speaking through Mr. Justice Holloway in the case of *State ex rel. Bonners Ferry Lumber Co., Ltd.,* v. *District Court,* 69 Mont. 436, 222 Pac. 1050, 1051, is peculiarly applicable here. In that case disbarment proceedings were instituted against one Shores and the cause set for trial. Defendant's motion for continuance was denied. Thereupon this proceeding was commenced seeking annulment of the order denying the motion for continuance. This court therein says: "To arrest the proceeding and compel a postponement would require this court to anticipate an adverse judgment by the trial court, while, if such result was to be anticipated, it will follow in any event, and a review on appeal be thus made necessary. It is true that an adverse judgment would perhaps fix the status of Mr. Shores with reference to his office in the meantime, so that he could not engage in practice; the statute apparently making no provision for a stay of the judgment. Still such, or a similar wrong, is one of the incidents of every erroneous judgment, and the possibility of its occurrence does not justify the interference by this court

in the proceedings prior to judgment; otherwise every manifest wrong during the course of a trial in a district court would justify such interference. For example, if a district court should refuse to sustain a demurrer to an information or an indictment which did not state an offense, or to a complaint on the ground that it did not state a cause of action, when it did not, this would be a manifest wrong, yet this situation may and does frequently arise. Interference in this case would open the door for a like interference in the cases used for illustration, with the result that this court would be constantly employed in the hearing and determination of applications like the one under consideration; thus rendering useless, in great measure, its appellate jurisdiction. This may not be done. If the judgment in the case should be adverse, an appeal from it would furnish a remedy as complete and adequate as the court can furnish in any case, and would be preventive of any wrong whatever except such as would be an incidental result of any erroneous judgment, for which, owing to the imperfection of human institutions, no remedy has as yet been devised, except to correct it by the ordinary procedure in the trial court, or upon review by the appellate court.''

We are of the opinion that the showing here made does not warrant the issuance of any writ under the supervisory powers of this court and, therefore, the motion to quash must be and it is granted, and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.